DRUMMOND ET AL. *v.* ACREE ET AL.

No. A-250 (72-167). Decided September 1, 1972

See: 458 F. 2d 486.

MR. JUSTICE POWELL, Circuit Justice.

This application, filed by parent-intervenors in this school desegregation case from Richmond County (Augusta), Georgia, seeks a stay of a judgment of the Court of Appeals for the Fifth Circuit. That court, on March 31, 1972, affirmed an order of the United States District Court for the Southern District of Georgia adopting a plan for the desegregation of 29 elementary schools in Augusta. *Acree* v. *County Board of Education of Richmond County,* 458 F. 2d 486 (1972). After the Fifth Circuit's affirmance, I denied a stay because that relief had not been requested from the appropriate Court of Appeals as ordinarily required by Rule 27 of the Supreme Court Rules. Applicants immediately sought a stay from the Fifth Circuit, which was denied.[1] Applicants have now reapplied to me.

This reapplication is premised solely on the contention that a stay is required under § 803 of the Education Amendments of 1972. That section reads in pertinent part as follows:

"[I]n the case of any order on the part of any United States district court which requires the transfer or

---

[1] A stay was also denied by the United States District Court for the Southern District of Georgia on August 18, 1972.

transportation of any student . . . *for the purposes of achieving a balance among students with respect to race* . . . , the effectiveness of such order shall be postponed until all appeals . . . have been exhausted . . . ." Education Amendments of 1972, Pub. L. 92–318, Tit. VIII, § 803, 86 Stat. 372, 20 U. S. C. § 1653 (1970 ed., Supp. II) (emphasis added).

By those terms, the statute requires that the effectiveness of a district court order be postponed pending appeal only if the order requires the "transfer or transportation" of students "for the purposes of achieving a balance among students with respect to race." It does not purport to block all desegregation orders which require the transportation of students. If Congress had desired to stay all such orders it could have used clear and explicit language appropriate to that result.

In § 802, which precedes § 803, Congress prohibited the use of federal funds to aid in any program for the transportation of students if the design of the program is to "overcome racial imbalance" or to *"carry out a plan of racial desegregation."* Education Amendments of 1972, § 802 (a), 20 U. S. C. § 1652 (a) (1970 ed., Supp. II) (emphasis added). It is clear from the juxtaposition and the language of these two sections that Congress intended to proscribe the use of federal funds for the transportation of students under *any* desegregation plan but limited the stay provisions of § 803 to desegregation plans that seek to achieve racial balance.

In light of this Court's holding in *Swann* v. *Charlotte-Mecklenburg Board of Education,* 402 U. S. 1 (1971), it could hardly be contended that Congress was unaware of the legal significance of its "racial balance" language. In that case the school authorities argued that § 407 (a) of the Civil Rights Act of 1964, 42 U. S. C. § 2000c–6 (a), restricted the power of federal courts in prescribing a

method for correcting state-imposed segregation. THE CHIEF JUSTICE's interpretation of § 407 (a), which applies only to orders "seeking to achieve a racial balance," is controlling here:

> "The proviso in [§ 407 (a)] is in terms designed to foreclose any interpretation of the Act as expanding the *existing* powers of federal courts to enforce the Equal Protection Clause. There is no suggestion of an intention to restrict those powers or withdraw from courts their historic equitable remedial powers. The legislative history of Title IV indicates that Congress was concerned that the Act might be read as creating a right of action under the Fourteenth Amendment in the situation of so-called 'de facto segregation,' where racial imbalance exists in the schools but with no showing that this was brought about by discriminatory action of state authorities." 402 U. S., at 17–18 (emphasis in original).

In short, as employed in § 407 (a), the phrase "achieve a racial balance" was used in the context of eliminating "de facto segregation." The Court went on to caution lower federal courts that, in the exercise of their broad remedial powers, their focus must be on dismantling dual school systems rather than on achieving perfect racial balance: "The constitutional command to desegregate schools does not mean that every school in every community must always reflect the racial composition of the school system as a whole." 402 U. S., at 24. This was said not in condemnation of existing techniques but in disapproval of the wooden resort to racial quotas or racial balance. Nothing in the instant statute or in the legislative history suggests that Congress used these words in a new and broader sense. At most, Congress may have intended to postpone the effectiveness of transportation orders in "de facto" cases and in cases in which district court judges have misused their remedial powers.

The question, therefore, must be whether the lower court order in this case was for the purpose of achieving a racial balance as that phrase was used in *Swann*. This question was resolved in the negative by the Court of Appeals. Applicants claimed on their appeal that the District Court order called for " 'forced busing' to achieve racial balance." 458 F. 2d, at 487. The court rejected that contention, citing the holding in *Swann* that bus transportation is one of the permissible techniques in effecting school desegregation.[2]

For the purpose of acting on this application, I accept the holding of the courts below that the order was entered to accomplish desegregation of a school system in accordance with the mandate of *Swann* and not for the purpose of achieving a racial balance. The stay application must, therefore, be denied.

*It is so ordered.*

[2] For a complete history of this litigation see the most recent opinion of the District Court. *Acree* v. *Drummond,* 336 F. Supp. 1275 (SD Ga. 1972).