**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**CITY OF LOS ANGELES et al.,
Defendants-Appellees.**

No. 77–3460.

United States Court of Appeals,
Ninth Circuit.

May 2, 1979.

Mark L. Cross, Atty., Dept. of Justice, Washington, D.C., for plaintiff-appellant.

John B. Rice, Senior Asst. City Atty., Los Angeles, Cal., for defendants-appellees.

Before HUFSTEDLER and TANG, Circuit Judges, and SOLOMON,* District Judge.

* Honorable Gus J. Solomon, Senior United States District Judge, District of Oregon, sitting by designation.

HUFSTEDLER, Circuit Judge:

The Government appeals from an order enjoining the United States from pursuing any administrative action or investigation regarding employment discrimination by the Los Angeles Police Department ("LAPD"), from terminating any funds to the City of Los Angeles ("City") because of personnel practices of the LAPD, and from failing to grant any request by the City for federal funding because of allegations of employment discrimination by the LAPD.[1] We hold that the City did not carry its burden of demonstrating facts entitling it to "preliminary relief" within the meaning of the Omnibus Crime Control and Safe Streets Act of 1968 ("Safe Streets Act," 42 U.S.C. § 3766(c)(2)(E)) because the City did not meet even the minimal standards for obtaining injunctive relief, and we vacate the injunction.

On June 2, 1977, the United States filed this action charging the LAPD with a pattern and practice of employment discrimination against blacks, women, and Spanish-surnamed persons. The complaint alleged violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et seq., as amended), the State and Local Fiscal Assistance Act of 1972 ("Revenue Sharing Act," 31 U.S.C. § 1242, as amended), and the Safe Streets Act. Pursuant to motions filed both by the City and the Government, the proceedings were stayed pending disposition of the appeal in Blake v. City of Los Angeles (C.D.Cal.1977) 435 F.Supp. 55.[2]

I

■ "The United States, as sovereign, is immune from suit save as it consents to be sued [citations omitted], and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." (United States v. Sherwood (1941) 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058; United States v. Agnew (9th Cir. 1970) 423 F.2d 513.) The United States does not waive its sovereign immunity by instituting the action in which a defendant asserts a claim for affirmative relief against the United States. (United States v. Eckford (1867) 6 Wall. (73 U.S.) 484, 18 L.Ed. 920; United States v. Mel's Lockers, Inc. (10th Cir. 1965) 346 F.2d 168; United States v. Patterson (5th Cir. 1953) 206 F.2d 345. See also Larson v. Domestic & Foreign Commerce Corp. (1949) 337 U.S. 682, 703–04, 69 S.Ct. 1457, 93 L.Ed. 1632. 14 Wright-Miller-Cooper, Federal Practice and Procedure § 3654, pp. 156 et seq. (1976).)

Consent to suit in this case rests solely on the Safe Streets Act. Accordingly, we turn our attention to that statute to ascertain the jurisdictional predicate for the injunction as well as to determine the applicable standards which govern the grant of the injunction.

II

■ The Safe Streets Act requires the Law Enforcement Assistance Administration ("LEAA") to suspend payment of funds to the LAPD 45 days after filing this action unless the district court correctly granted "preliminary relief." (42 U.S.C. § 3766(c)(2)(E).) Defendants seeking to enjoin automatic suspension of LEAA funds under the statute must meet the normal

---

1. The injunction reads as follows: "The federal Government, including all agencies and departments thereof, are hereby enjoined from pursuing or initiating administrative actions, reviews, or investigations pertaining to or arising from alleged employment discrimination relating to the Los Angeles Police Department; from terminating any federal funding to the City of Los Angeles or any department or agency thereof as a result of or arising out of any personnel practice(s) relating to the Los Angeles Police Department; and from using any allegations of employment discrimination relating to the Los Angeles Police Department as a reason to fail to grant or to otherwise disapprove the funding of federal grant programs for which the City applies."

2. In Blake v. City of Los Angeles (C.D.Cal. 1977) 435 F.Supp. 55, the same district court awarded summary judgment to defendants in a private class action alleging sex discrimination by the LAPD in violation of Title VII and the Fourteenth Amendment. Today we reverse the district court's decision in Blake v. City of Los Angeles (9th Cir. 1979) 595 F.2d 1367, and remand for further proceedings.

standards for obtaining injunctive relief, absent explicit provisions to the contrary in the statute. (*United States v. Commonwealth of Virginia* (4th Cir. 1978) 569 F.2d 1300.)

The City contends that Section 518(b) of the Safe Streets Act (42 U.S.C. § 3766(b)) required the district court to issue an injunction restraining LEAA from cutting off the funding. That section provides that the Act shall not authorize LEAA "to deny or discontinue a grant" because of a refusal to adopt "a percentage ratio, quota system, or other program to achieve racial balance or to eliminate racial imbalance in any law enforcement agency."[3] The City's theory is that the reason the Government brought this suit was the refusal of the LAPD to adopt a quota system for police hiring proposed by LEAA. In support of its contention, the City refers to facts recited in affidavits accompanying its petition for injunctive relief that this action was filed only after LAPD had refused to adopt a voluntary compliance agreement setting "goals" and "time tables" for increasing the percentage of blacks, women, and Spanish-surnamed persons employed by the LAPD.

Even if we assume, *arguendo,* that the "goals" and "time tables" proposed by LEAA constitute a "quota system," it was not a system forbidden by Section 518(b) because there is no evidence that the system was part of a "program to achieve racial balance" within the meaning of the statute. The phrase "program to achieve racial balance" is a term of art referring to attempts to remedy racial disparities that were not produced by discrimination. (*Swann v. Charlotte-Mecklenburg Board of Education* (1971) 402 U.S. 1, 17–18, 91 S.Ct. 1267, 28 L.Ed.2d 554.)[4] A "quota system" directed toward alleviating gender-based discrimination is obviously outside the purview of efforts "to achieve a racial balance." Of greater moment, however, there is nothing in the record to suggest that the federal Government sought to remedy racial disparities not created by unlawful discrimination. The prospective suspension of LEAA funds was the product of a lawsuit alleging a pattern or practice of unlawful discrimination. It is undisputed that one of the reasons that negotiations between LEAA and the City collapsed was the City's refusal to abandon the use of its physical tests, height requirement, and written tests for the selection of police officers. This refusal can hardly be called a refusal to adopt a "quota system." Moreover, in the companion case, *Blake v. City of Los Angeles* (9th Cir. 1979) 595 F.2d 1367, we hold that the physical test and height requirement are prima facie violations of Title VII that must be justified by a showing of business necessity.[5]

To sustain the granting of the preliminary injunction, the burden was on the City to demonstrate either probable success on the merits and the possibility of irreparable harm, or serious questions going to the merits and a balance of hardships tipping sharply in its favor. (*William Inglis & Sons Baking Co. v. ITT Continental Baking Co.* (9th Cir. 1975) 526 F.2d 86.) The district court did not make any separate findings of fact and conclusions of law to support the issuance of the injunction. The basis for the district court's decision appears in the court's Memorandum Opinion: "In order to maintain the status quo and to

3. 42 U.S.C. § 3766(b) provides: "Notwithstanding any other provision of law nothing contained in this chapter shall be construed to authorize the Administration [LEAA] (1) to require, or condition the availability or amount of a grant upon, the adoption by an applicant or grantee under this chapter of a percentage ratio, quota system, or other program to achieve racial balance or to eliminate racial imbalance in any law enforcement agency, or (2) to deny or discontinue a grant because of the refusal of an applicant or grantee under this chapter to adopt such a ratio, system, or other program."

4. Since Congress has re-enacted Section 518(b) twice since the *Swann* decision, it is reasonable to conclude that Congress was aware of the legal significance of the "racial balance" language. (*See Drummond v. Acree* (1972) 409 U.S. 1228, 93 S.Ct. 18, 34 L.Ed.2d 33 (Powell, Circuit Justice, on reapplication for stay).)

5. The district court made no findings relevant in any respect to this issue.

prevent irreparable injury to the law enforcement plans and programs of the Police Department of the City of Los Angeles pending the outcome of this litigation, the injunction as prayed for should likewise be granted." The court also stated, citing its opinion in *Blake v. City of Los Angeles* (C.D.Cal.1977) 435 F.Supp. 55, "[i]t does not appear . . . that the plaintiff's ultimate success in this case is probable." Because we have reversed *Blake*, the district court's prediction of the City's probable success on the merits is erroneous.[6]

The record failed to demonstrate that LAPD would suffer any irreparable injury in the absence of an injunction. To be sure, the City faced prospective suspension of LEAA funding to the LAPD. As a matter of law, the loss of this funding cannot be deemed irreparable injury in the absence of a more convincing showing than that made by the City here.[7] Congress deliberately imposed an automatic suspension of funding to achieve the purposes of the legislation by creating an additional incentive for compliance with the non-discrimination provisions of the Safe Streets Act. Actions undertaken by the Attorney General, as in this case, or by other administrative agencies charged with the responsibility to enforce the provisions of the Safe Streets Act, the Revenue Sharing Act, and Title VII cannot be enjoined simply because those actions may require recipients of congressional largesse to expend large amounts of time and taxpayers' resources. (*See Renegotiation Board v. Bannercraft Clothing Co.* (1974) 415 U.S. 1, 24, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *cf. City of Milwaukee v. Saxbe* (7th Cir. 1976) 546 F.2d 693.)

Finally, an order enjoining the suspension of LEAA funds cannot be justified on the grounds that it was necessary "to maintain the status quo." Congress has directed that the status quo cannot be maintained following the filing of a "pattern or practice" complaint by the Attorney General under the Safe Streets Act. It would defeat the purpose of the automatic fund suspension provision of Section 3766(c)(2)(E) to enjoin the suspension of such funds to maintain the status quo that the statute was designed to disrupt. (*See, e. g., United States v. County of Milwaukee* (E.D.Wis.1978) 449 F.Supp. 949, 951.)[8]

On remand, the district court should reconsider the United States' request for preliminary relief under the standards outlined in this opinion and in *Blake v. City of Los Angeles,* 595 F.2d 1367.

The injunction is vacated and the cause is remanded to the district court for further proceedings consistent with the views herein expressed.

---

6. The City argues that, *Blake* aside, it will ultimately prevail on the merits because of claimed jurisdictional deficiencies in the Government's lawsuit. It is unnecessary for us to reach any of these contentions for two reasons: First, jurisdiction was adequately founded on the non-discrimination provisions of the Safe Streets Act (42 U.S.C. § 3766(c)), and second, the district court did not address any of these contentions in granting the injunction.

7. Affidavits submitted by the City indicated that the primary effect of a loss of these funds would be the reassignment of certain officers participating in a program to control street gangs.

8. The City has conceded on appeal that the injunction is indefensibly overbroad. Neither the Safe Streets Act nor any other relevant statute provides consent of the United States to jurisdiction pursuant to which the district court could enjoin the federal government and all of its agencies and departments "from pursuing or initiating administrative actions, reviews, or investigations pertaining to or arising from alleged employment discrimination relating to the Los Angeles Police Department," or from "using any allegations of employment discrimination relating to the Los Angeles Police Department as a reason to fail to grant or to otherwise disapprove the funding of federal grant programs for which the City applies."