Eugenia **ALIRE**, Plaintiff,

v.

Charles V. **JACKSON**, Defendant.

No. CIV 99–357–JO.

United States District Court,
D. Oregon.

Sept. 9, 1999.

Craig J. Dorsay, Portland, OR, for Plaintiff.

Dennis C. Karnopp, Karnopp Petersen Noteboom Hansen Arnett & Saye, Bend, OR, for Defendant.

### OPINION AND ORDER

ROBERT E. JONES, District Judge.

On March 15, 1999, plaintiff Eugenia Alire filed a petition for writ of habeas corpus pursuant to the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1303, seeking relief from an Order of Exclusion excluding her from the Warm Springs Indian Reservation ("Reservation").[1] On March 17, 1999, the court granted plaintiff's ex parte motion for an emergency temporary restraining order to allow her on the Reservation to obtain mental and physical health care for herself and her children. That order remains in effect.[2]

The case is now before the court on defendant's motion (# 29) for summary judgment and plaintiff's cross-motion (# 40) for summary judgment. For the reasons explained below, defendant's motion is granted and plaintiff's motion is denied. Accordingly, the restraining order entered on March 17, 1999, is dissolved and plaintiff's petition for writ of habeas corpus is dismissed.

1. The defendant, Charles Jackson, is the Secretary–Treasurer of the Confederated Tribes of the Warm Springs Reservation of Oregon.

2. *See* docket # # 12, 25, 37.

## FACTUAL BACKGROUND

Plaintiff is a member of the Shoshone–Paiute Indian tribe who worked and received health care benefits on the Reservation. She is neither a resident nor a member of the Confederated Tribes of the Warm Springs Reservation of Oregon (the "Tribe").

From November 1993 through May 15, 1998, the Tribe employed plaintiff as an assistant care-giver at the Tribe's Early Childhood Center, where her responsibilities included caring for tribal members' infant children. From May 15, 1998, through February 1999, plaintiff worked in the Health and Wellness Center on the Reservation.

In February 1998, an incident occurred in which investigators found that plaintiff and others had placed masking tape on infants' faces and in their hair, causing the infants to cry. On August 21, 1998, plaintiff entered a plea of no contest in Tribal Court to one count of child neglect and was sentenced to 180 days in jail.[3]

Plaintiff's continued presence on the Reservation after the incident was controversial and gave rise to a number of complaints to the Tribal Council. *See* Affidavit of Olney Patt, Jr., ¶ 7. On February 10, 1999, 34 tribal members submitted a petition entitled "Request for Permanent Exclusion of Nonresident/Nonmember," in which they requested plaintiff's permanent exclusion, to Gordon Cannon, the Warms Springs Agency Superintendent for the Bureau of Indian Affairs. Cannon issued an order excluding plaintiff, but rescinded it.[4]

After Cannon rescinded his order, tribal members began lobbying the Tribal Council to exclude plaintiff. The Tribal Council considered plaintiff's exclusion at a meeting on March 2, 1999, and a majority voted to exclude her. As reflected in the Order of Exclusion dated March 2, 1999, the Council found that plaintiff had breached the peace, caused physical loss to tribal property, committed a crime, and violated a tribal ordinance.[5] The Council ordered plaintiff immediately and permanently excluded from tribal territory. *See* Affidavit of Olney Patt, Jr., Exhibit 1.

## STANDARDS

■■■ "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). Lack of subject matter jurisdiction is never waived and can be raised by any party or the court at any time. *See Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 704, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Moreover, federal courts presumptively are without subject matter jurisdiction, and the burden of establishing subject matter jurisdiction rests upon the party asserting it. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows

---

**3.** According to plaintiff, her sentence was suspended and she never spent any time in jail. Plaintiff's Concise Statement of Undisputed Material Facts, ¶ 4.

**4.** Under the Tribal Constitution, the Tribal Council, not the Bureau of Indian Affairs, has the authority to issue exclusion orders.

**5.** These acts all constitute independent valid reasons for exclusion under Warm Springs Tribal Code § 300.310, which provides:

Nonresident nonmembers may be excluded from the territory of The Confederated Tribes by reason of commission of one or more of the following acts either within or without the territory of the Confederated Tribes:

(1) Breach of the peace.

\* \* \* \* \* \*

(6) Any act causing physical loss or damage of any nature to tribal property or property of any enrolled member.

(7) Crime, as defined by state, federal, or tribal law.

(8) Violation of any tribal ordinance.

Memorandum in Support of Plaintiff's Motion for Summary Judgment, Exhibit A, p. 35.

that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service,* 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

Plaintiff brings this action pursuant to 25 U.S.C. § 1303, which provides:

> The privilege of the writ of habeas corpus shall be available to any person in a court of the United States, to test the legality of his detention by order of an Indian tribe.

In her petition, plaintiff alleges that the exclusion order constitutes unlawful detention, in that the order (1) denied her substantive and procedural rights to due process and her right to equal protection under Warm Springs Tribal Law in violation of 25 U.S.C. § 1302(8)(Second, Fourth, and Sixth Claims); (2) put her in jeopardy twice for the same offense in violation of 25 U.S.C. § 1302(3)(Third Claim); and (3) violated her federal constitutional rights (Fifth Claim).

### A. *Availability of Habeas Corpus Relief*

Habeas corpus relief under section 1303 is available in federal court for violations of Title I of ICRA, 25 U.S.C. §§ 1301–1303. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Defendant argues, however, that this court lacks jurisdiction under section 1303 to review a Tribe's civil, as opposed to criminal, decisions. Defendant relies for this proposition on *Martinez, supra,* but that case does not directly support defendant's argument.

In *Martinez,* the Supreme Court held that in enacting ICRA, Congress neither expressly nor impliedly authorized civil actions in federal court for declaratory or injunctive relief against tribes or their members for violations of section 1302. 436 U.S. at 72, 98 S.Ct. 1670. *Martinez* does not address whether habeas relief under section 1303 is limited to tribal criminal proceedings, but certain language in *Martinez* can be read to support an argument that it is. *See Martinez,* 436 U.S. at 67, 98 S.Ct. 1670, in which the Court explained that

> In settling on habeas corpus as the exclusive means for federal-court review of tribal criminal proceedings, Congress opted for a less intrusive review mechanism than had been initially proposed. Originally, the legislation would have authorized de novo review in federal court of all convictions in tribal court. * * * [I]t became clear that even those in agreement with the general thrust of the review provision—*to provide some form of judicial review of criminal proceedings* in tribal courts believed that de novo review would impose unmanageable financial burdens on tribal governments and needlessly displace tribal courts. * * * Moreover, tribal representatives argued that de novo review would "deprive the tribal court of all jurisdiction in the event of an appeal, thus having a harmful effect upon law enforcement within the reservation," and urged instead that "decisions of tribal courts ... be reviewed in the U.S. district courts upon petition for a writ of habeas corpus."

436 U.S. at 69, 98 S.Ct. 1670 (citations and footnote omitted; emphasis added).

In *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874 (2nd Cir.1996), one of few cases examining the jurisdictional prerequisites of section 1303, the court first acknowledged that *Martinez* "does not suggest that habeas jurisdiction is available *exclusively* as a vehicle for reviewing tribal criminal proceedings." *Poodry*, 85 F.3d at 887 (emphasis in original). The *Poodry* court then identified two factors that, in its view, favor the position that section 1303 applies only in the context of a criminal charge or prosecution. First, in *Lehman v. Lycoming County Children's Services*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), the Supreme Court discussed the scope of federal habeas review of a decision of another "sovereign," in that case, a state. The Court observed that earlier cases had limited the availability of the writ of habeas corpus, when used to challenge a state court judgment, to situations where a petitioner had suffered substantial restraints " 'as a result of a state-court *criminal conviction.*' " *Poodry*, 85 F.3d at 887 (quoting *Lehman*, 458 U.S. at 510, 102 S.Ct. 3231 (emphasis added)). Second, the first set of Indian rights bills, introduced in 1964 and 1965, would have permitted direct appeal to federal district court of a conviction " 'in any *criminal* action hereafter commenced in an Indian court.' " *Poodry*, 85 F.3d at 887 (quoting S. 962, 89th Cong,. 1st Sess. (1965))(emphasis added).[6]

Although *Poodry* ultimately did not resolve the question of whether habeas review is restricted to cases involving tribal criminal decisions, the Second Circuit did observe that "it would be possible to conclude that the remedial section ultimately enacted—providing for habeas review—was intended by Congress to apply only in criminal cases." *Poodry*, 85 F.3d at 888; *see also Shenandoah v. U.S. Dept. of Inte-*

*rior*, 159 F.3d 708, 713 (2nd Cir. 1998)(ICRA does not establish or imply a federal civil cause of action to remedy violation of § 1302).

■ Based upon the reasoning of the above cases, I am persuaded that the writ of habeas corpus available under section 1303 is limited to unlawful detentions arising out of tribal criminal decisions. Therefore, if plaintiff's exclusion from the Reservation arose out of a criminal proceeding, then her habeas petition properly is before this court.

## B. *Exclusion as a Civil v. Criminal Action*

■ In *Poodry*, plaintiffs, members of the Tonawanda Band of Seneca Indians, were summarily convicted of "treason" and sentenced to permanent banishment from the Tonawanda Seneca Indian Reservation without trial or a hearing. 85 F.3d at 876. The banishment stripped them of their Indian names, their lands, their Indian citizenships, and their tribal memberships. *Id.* Plaintiffs received notice of the banishment in a document that, among other things, stated that plaintiffs had engaged in "unlawful activities," including "actions to overthrow, or otherwise bring about the removal of, the traditional government" of the Tonawanda Band, and that for these reasons, plaintiffs were "convicted of TREASON." 85 F.3d at 889.

The Second Circuit concluded that while ordinarily "the inquiry into whether a sanction is 'criminal' or 'civil' is neither simple nor mechanical," the banishment at issue in *Poodry*—where individuals who satisfied the general criteria for tribal membership are stripped of that membership in direct response to allegedly prohibited conduct—clearly arose in a criminal context. *Poodry*, 85 F.3d at 888–89.

---

6. ICRA does not contain this language, and as the Second Circuit observed in *Poodry*, ICRA's legislative history does not permit a definitive conclusion as to whether Congress intended that habeas review be restricted to criminal convictions, or whether other circumstances of "detention" by a tribal court order could trigger habeas review. *Poodry*, 85 F.3d at 888.

The Supreme Court decision in *Duro v. Reina*, 495 U.S. 676, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), sheds additional light on this issue. In *Duro*, the Court held that although Indian tribes lack criminal jurisdiction over minor crimes committed by non-members, Indian tribes still possess "their traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands." *Duro*, 495 U.S. at 696, 110 S.Ct. 2053. *Duro* does not expressly state that "exclusion" is a civil proceeding, but implies that "exclusion" proceedings are separate from criminal jurisdictional issues. *See Duro*, 495 U.S. at 696–97, 110 S.Ct. 2053; *see also Brendale v. Confederated Tribes and Bands of Yakima Indian Nation*, 492 U.S. 408, 422, 109 S.Ct. 2994, 106 L.Ed.2d 343 (1989).[7]

Plaintiff relies heavily on *Poodry*, asserting that her "exclusion" from the Reservation in this case is analogous to the permanent banishment in *Poodry* and thus is a criminal proceeding, giving this court jurisdiction. Defendant, on the other hand, relies on *Martinez, supra*, asserting that plaintiff's exclusion is more analogous to the membership decision at issue in *Martinez* than to the banishment at issue in *Poodry*. Both parties also argue that this court should recognize "exclusion" proceedings as always civil or always criminal in nature. I decline to do so.

The permanent banishment imposed on the plaintiffs in *Poodry* had a close nexus in time and scope to their alleged criminal activities. Consequently, the Second Circuit had no difficulty arriving at the reasonable conclusion that the banishment was a criminal sanction. Exclusions that lack a similar close nexus, however, are not necessarily construed as criminal proceed-

ings. In *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 478 (1985), for example, the Ninth Circuit held that the exclusion of a nonmember from tribal lands was an exercise of a tribe's civil jurisdiction.

Plaintiff in this case asserts that her exclusion was punishment for her earlier criminal conviction.[8] The evidence, however, does not support her claim. In her affidavit, plaintiff states that in connection with her plea bargain, the judge gave her only "a warning of exclusion." Affidavit No. 2 of Eugenia Alire, ¶21. The actual exclusion order was made seven months after plaintiff's criminal conviction, thus lacking the temporal nexus found in *Poodry*. Moreover, in addition to plaintiff's criminal conviction, the exclusion order lists three other, separate offenses under WSTC 300.310 as reasons for her exclusion, further underscoring the absence of a close nexus between plaintiff's criminal conviction and her eventual exclusion from the Reservation.

Because the evidence fails to establish a close nexus between plaintiff's exclusion and her criminal conviction, I conclude that this particular exclusion order was a valid exercise of the Tribe's civil, not criminal, jurisdiction. Consequently, I also conclude that this court lacks subject matter jurisdiction over plaintiff's petition for habeas relief.

## C. Severe Limitations on Plaintiff's Liberties

Plaintiff also fails to demonstrate that her exclusion gives rise to a sufficiently severe restraint on her liberty to satisfy the prerequisites for habeas review. *See*

7. In 1990, Congress amended ICRA, affirming the inherent power of Indian tribes "to exercise criminal jurisdiction over all Indians" (*see* 25 U.S.C. § 1301(2), as amended Nov. 5, 1990), thus effectively overturning *Duro*, but the portion of *Duro* that is relevant to the present issue remains valid.

8. Plaintiff argues that the court already has found her exclusion to be "criminal" and

"punitive." *See, e.g.,* Plaintiff's Memorandum in Support of Motion for Summary Judgment, pp. 1–2, 8. The court's comments, however, were made in the limited context of the motions then pending, well before the record was fully developed on summary judgment, and plaintiff's reliance on those comments is misplaced.

*Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973)(limiting habeas review to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate); *see also Poodry,* 85 F.3d at 894 (inquiry into whether a petitioner has satisfied the jurisdictional prerequisites for habeas review requires court to judge the "severity" of an actual or potential restraint on liberty).

Plaintiff's exclusion in this case falls far short of the severe restraint on liberty suffered by the plaintiffs in *Poodry.* Unlike the *Poodry* plaintiffs, plaintiff has not been stripped of her Indian name, her lands, her tribal citizenship, or her tribal membership, nor has she been banished from her own Tribe's reservation or territory. Indeed, plaintiff retains her Indian citizenship and remains a member of the Shoshone–Paiute tribe. Additionally, she retains the right to seek employment and health care benefits elsewhere.

In her affidavit, plaintiff explains her version of the events leading to the criminal proceeding, and suggests that her criminal conviction was unfair and unconstitutional. *See generally* Affidavit No. 2 of Eugenia Alire. Nowhere, however, does she describe actual or potential severe restrictions on her liberty due to her exclusion from the Reservation. Plaintiff also fails to explain why she cannot seek health care or employment elsewhere. Accordingly, even if plaintiff's habeas petition were properly before this court, which it is not, plaintiff has failed to demonstrate a severe actual or potential restraint on her liberty sufficient to give rise to habeas relief.

## CONCLUSION

For the reasons stated, defendant's motion for summary judgment (# 29) is GRANTED and plaintiff's cross-motion for summary judgment (# 40) is DENIED. Plaintiff's petition for writ of habeas corpus is DISMISSED and the temporary restraining order entered on March 17, 1999, is dissolved. Any other pending motions are denied as moot.