**SANTA YNEZ BAND OF MISSION INDIANS, Plaintiff,**

**v.**

**Vince TORRES, Defendant.**

**Gale A. Norton, Secretary of the Interior; Virgil Townsend, Agency Superintendent, Bureau of Indian Affairs; and the United States of America, Real Parties in Interest.**

**No. CV 01–01738 SVW AIJX.**

United States District Court,
C.D. California.

Aug. 29, 2002.

Lawrence R. Stidham, Brena L. Tomaras, Joanne Willis Newton, Laura Y. Miranda, California Indian Legal Services, Escondido, for Plaintiffs.

William Van Doren, William Van Doren Law Offices, Santa Maria, for Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WILSON, District Judge.

### I. INTRODUCTION

Plaintiff Santa Ynez Band of Mission Indians (the "Tribe") seeks an order re-

quiring the removal and permanent exclusion by the United States Marshal of Defendant Vince Torres ("Torres") and all of his personal property from the Santa Ynez Reservation (the "Reservation"). Plaintiff has filed a motion for summary judgment, alleging that there are no material issues of fact in dispute and Plaintiff is entitled to judgment as a matter of law.

As set forth below, Plaintiff's motion for summary judgment is DENIED.

## II. FACTUAL BACKGROUND

Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation, California is a federally-recognized Indian tribe. *See* 65 F.R. 13298 (2000). Other than that independently-identifiable piece of information, Plaintiff has failed to submit admissible evidence from which this Court could determine the factual genesis of this case. Stapled to the back of Plaintiff's summary judgment motion are various pieces of paper. Unfortunately, there is not a single declaration in the record identifying what any of those documents actually are. Nevertheless, the Court will presume that Plaintiff will be able to supplement the record with the necessary declarations, and for the purposes of the present analysis, will assume the facts as they are alleged to be true.

The Tribe claims to have passed a resolution on May 9, 2000 that banned Defendant Torres from the Santa Ynez Reservation. In looking at the documents submitted by Plaintiff, there is one document dated August 11, 2000, indicating a ballot on the "Ban of Vince Torres," with 70 approval votes, 29 disapproval votes, and 2 abstentions. There is another document dated June 29, 2001, entitled "Resolution # 832" indicating that a "Mr. Vincent Torres is not a member of the Band." There is a third document dated May 9, 2000, entitled "Resolution # 831" indicating that "the Santa Ynez Band of Mission Indians hereby authorizes the banning of Mr. Vince Torres from the Santa Ynez Indian Reservation." This document also indicates a vote of 70 in favor, 29 opposed, and 2 abstaining, although it is dated over three months prior to the other document indicating a vote of the same tally. Other than what appears to be a copy of part of the Federal Register, no other pertinent documents are provided in Plaintiff's briefs. Nonetheless, notwithstanding the inconsistent dates between the first and third documents, this evidence, once properly identified, would indicate to the Court that Defendant Torres was barred from the Reservation by a majority vote of the General Council.

In response, Defendant Torres has submitted a declaration indicating that, prior to the passage of Resolution # 831, he had entered into a contract with the Tribe to do certain construction and remedial work on the Reservation. He claims that, as a general contractor, he has been asked by members of the Tribe to do construction work on their individual properties, and he has contracts on which work is currently being done. He also asserts that he was never made aware of Resolution # 831, which he claims was intended to banish him from the Reservation.

As none of Plaintiff's documents are identified by witness declaration, they are not properly admitted as evidence, and cannot at this point be considered for purposes of this motion for summary judgment. Thus, based on the lack of admissible evidence submitted by Plaintiff alone, there is no basis for the Court to grant summary judgment. Regardless, the Court feels the parties would benefit from an analysis of the legal issues in this case, assuming that Plaintiff will be able to submit admissible evidence to verify the allegations made in its briefs.

## III. DISCUSSION

### A. Summary Judgment Standards

Rule 56(c) requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). That burden may be met by " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. Once the moving party has met its initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify specific facts that show a genuine issue for trial. *See id.* at 323–34, 106 S.Ct. at 2553; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Only genuine disputes—where the evidence is such that a reasonable jury could return a verdict for the nonmoving party— over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d 202; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001) (the nonmoving party must offer specific evidence from which a reasonable jury could return a verdict in its favor).

### B. Federal Jurisdiction

Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1362. The language of section 1362 states, "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe ... wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." The language "arises under the Constitution, laws, or treaties of the United States" is identical to that of section 1331. In this regard, in order to invoke federal jurisdiction, Plaintiff has to assert a federal question. *See Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 712 (9th Cir. 1980).

In *Chilkat Indian Village v. Johnson*, 870 F.2d 1469 (9th Cir.1989), the Ninth Circuit held that, in suits seeking to enforce tribal ordinances against non-members, where there are federal issues as to the Indian tribe's power to enact and enforce its ordinance, the case arises under federal law for purposes of 28 U.S.C. § 1362. *Id.* at 1475. The court in *Chilkat Village* found that there were disputed issues surrounding the Village's allegations of sovereign power, as a matter of federal statute and federal common law, to enforce its ordinance against non-members. Relying on the Supreme Court holding in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the court stated the following:

> It would be too technical, we believe, to focus only on the ultimate ordinance, which is not federal, and to ignore the necessity for the Village to prove its disputed federal power to enact and apply it to those outside of its community. We conclude, therefore, that the Vil-

lage's claim against [the non-member defendants] arises under federal law.
*Chilkat Village,* 870 F.2d at 1475.

However, the court went on to note that "the federal courts do not stand ready to entertain every case arising under a tribal ordinance, when there is no inherent and disputed federal question about the tribe's power to enact it.... It is safe to say, therefore, that every claim based upon a tribal ordinance does not, ipso facto, arise under federal law." *Id.* at 1476.

■■■ Here, the Tribe is claiming an inherent and exclusive power to exclude non-members from its tribal territory. Much like the plaintiff's assertion of "reserved powers" in *Chilkat Village,* the Tribe's inherent powers must necessarily arise under federal law, since federal law defines the outer boundaries of an Indian tribe's power over non-Indians. *See National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 851–52, 105 S.Ct. 2447, 2451–52, 85 L.Ed.2d 818 (1985). Therefore, the Tribe's claim arises under federal law, and this Court has proper jurisdiction to adjudicate this matter. *See Chilkat Village,* 870 F.2d at 1475; *Native Village of Tyonek v. Puckett,* 957 F.2d 631, 634 (9th Cir.1992).

## C. Tribe's Power to Exclude Non-Members

■■■ The Tribe asserts that it has an inherent and exclusive authority to exclude non-members from the Reservation. In support of this argument, the Tribe cites to a litany of Supreme Court decisions dating back to the 1800s. *See Worcester v. Georgia,* 31 U.S. (6 Pet.) 515, 559, 8 L.Ed. 483 (1832); *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 153, 100 S.Ct. 2069, 2081, 65

L.Ed.2d 10 (1980); *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 139, 102 S.Ct. 894, 902, 71 L.Ed.2d 21 (1982). While the Court recognizes that the Tribe does possess the power to exclude non-members from the Reservation, such power only exists "[i]n the absence of treaty provisions or congressional pronouncements to the contrary." *Quechan Tribe of Indians v. Rowe,* 531 F.2d 408, 410–11 (9th Cir.1976) (citing *Williams v. Lee,* 358 U.S. 217, 219, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) and *Worcester v. Georgia,* 31 U.S. (6 Pet.) at 561); *Ortiz–Barraza v. United States,* 512 F.2d 1176, 1179 (9th Cir.1975).

As the Ninth Circuit stated in *Babbitt Ford, Inc. v. Navajo Indian Tribe,* 710 F.2d 587 (9th Cir.1983):

Indian tribes have long been recognized as sovereign entities, 'possessing attributes of sovereignty over both their members and their territory....' *United States v. Wheeler,* 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978) (citations omitted). This sovereignty is not absolute. Tribal sovereignty is subject to limitation by specific treaty provisions, by statute at the will of Congress, by portions of the Constitution found explicitly binding on the tribes, or by implication due to the tribes' dependent status.

Consequently, Indian tribes are 'no longer 'possessed of the full attributes of sovereignty' ...' *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55–66, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (citations omitted).

*Id.* at 591–92 (internal footnotes omitted).

Therefore, while Indian tribes certainly possess the inherent right to exclude non-members from tribal lands as part of their sovereign right of self-government,[1] the

---

1. "[T]he exclusionary power is a fundamental sovereign attribute intimately tied to a tribe's ability to protect the integrity and order of its territory and the welfare of its members ..."

*Felix S. Cohen's Handbook of Federal Indian Law ("Federal Indian Law"),* Ch. 4, § C5 at 252 (1982).

right to do so is subject to the limits imposed under federal law. *See National Farmers Union Ins.*, 471 U.S. at 851, 105 S.Ct. at 2451 ("[F]ederal law defines the outer boundaries of an Indian tribe's power over non-Indians.").

### D. Indian Civil Rights Act

■ One such law limiting the Tribe's power is the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C. §§ 1301–1341. In pertinent part, Title I of the ICRA applies many of the individual protections afforded by the Bill of Rights to the application of Indian laws.[2] Two of those protections include the right to be free from the deprivation of liberty or property without due process of law, and the prohibition on passing bills of attainder. *See* 25 U.S.C. § 1302(8) and (9).[3]

Accordingly, Defendant argues that the Tribe's ordinance excluding him from the Reservation deprives him of his property without due process, and constitutes a bill of attainder.[4] However, as the Tribe points out, the Supreme Court has held that there is no right to bring a civil action under the ICRA against a tribe or its officers in federal court, and thus, this Court cannot consider Defendant's argument. *See Santa Clara Pueblo v. Martinez*, 436 U.S. at 51–52, 98 S.Ct. at 1673–74; *R.J. Williams Company v. Fort Belknap Housing Authority*, 719 F.2d 979, 981 (9th Cir.1983) (recognizing that *Santa Clara* precludes bringing civil actions in federal court under the ICRA, other than habeas corpus).[5]

Nevertheless, Defendant is not bringing an action in federal court. Instead, he is asserting a defense to an action brought by the Tribe in the Tribe's chosen forum.[6] No case identified by the parties or located by this Court has held that section 1302 could not be used as a defense to an action brought in federal court, nor have any of the leading treatises on Indian law addressed this issue. Therefore, the Court will look to the purpose of the ICRA and its restriction on private civil right of ac-

2. The Bill of Rights is not applicable to Indian tribes. "Indian tribes are not states of the union within the meaning of the Constitution, and the constitutional limitations on states do not apply to tribes." *Federal Indian Law*, Ch. 12, § E2 at 664–65; *Santa Clara Pueblo v. Martinez*, 436 U.S. at 56, 98 S.Ct. at 1675–76 ("As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority."); *Talton v. Mayes*, 163 U.S. 376, 384, 16 S.Ct. 986, 989, 41 L.Ed. 196 (1896) (holding that the Fifth Amendment did not apply to tribal government).

3. The ICRA has been held to apply for the benefit of non-members as well as members of a tribe. *See Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1223 (9th Cir.2001) (citing *United States v. Mazurie*, 419 U.S. 544, 558 n. 12, 95 S.Ct. 710, 718 n. 12, 42 L.Ed.2d 706 (1975)); *White v. Pueblo of San Juan*, 728 F.2d 1307, 1312 n. 1 (10th Cir.1984); *Dodge v. Nakai*, 298 F.Supp. 17, 24 (D.Ariz.1968).

4. The property at issue here are the contracts that Defendant claims he has entered into with other tribal members, which allegedly cannot be performed if he is excluded from tribal lands.

5. Prior to the holding in *Santa Clara*, numerous courts had entertained actions brought against an Indian tribe under Title I of the ICRA. *See, e.g., Johnson v. Lower Elwha Tribal Cmty.*, 484 F.2d 200, 202–03 (9th Cir.1973). In fact, one court found that the exclusion of a non-member from a reservation constituted an unlawful bill of attainder, as well as being a violation of due process and a deprivation on the freedom of speech, as set forth under the ICRA. *See Dodge v. Nakai*, 298 F.Supp. 26, 31–34 (D.Ariz.1969).

6. The Tribe asserts in its complaint that "[t]he Tribe does not have the resources to maintain law enforcement personnel to enforce tribal law, nor does the Bureau of Indian Affairs provide funding to the Tribe to enforce tribal law on the Tribe's Reservation." Compl., ¶ 11.

tion in federal court to determine whether Defendant can assert a defense under the ICRA.

The ICRA was enacted in 1968 after over seven years of legislative debate. The tension was between providing tribal members with the protections available to other Americans through the Constitution and maintaining the sovereign status of the tribe to create and maintain its own government. *See Poodry v. Tonawanda Band of Seneca Indians,* 85 F.3d 874, 882–83 (2d Cir.1996); *United States v. Wadena,* 152 F.3d 831, 843–44 (8th Cir.1998). In accordance with these goals, the Supreme Court held in *Santa Clara,* supra, that it is the responsibility of the tribes, not the federal courts, to incorporate section 1302 into tribal laws. "Tribal forums are available to vindicate rights created by the ICRA, and § 1302 has the substantial and intended effect of changing the law which these forums are obliged to apply. Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interest of both Indians and non-Indians." *Id.,* 436 U.S. at 65, 98 S.Ct. at 1680–81 (internal footnotes omitted).

The only available federal cause of action under which an individual can assert a violation of section 1302 are habeas petitions under section 1303. *See id.* at 66–67, 98 S.Ct. at 1681–82; 25 U.S.C. § 1303.[7] In other words, it is the Supreme Court's opinion that, other than for situations under which habeas relief is applicable, the tribal courts can be adequate adjudicators of civil rights violations under section 1302.

■ In addition to basing its decision on the availability of an alternative forum in tribal courts, the Supreme Court also recognized that suits against the tribe under the ICRA were barred because of an Indian tribe's sovereign immunity from suit, and because Congress did not intend to waive that immunity under this Act. *Id.* at 59, 98 S.Ct. at 1677. Thus, as Plaintiff argues, Defendant cannot assert a violation of the ICRA, because the Tribe has not waived its sovereign immunity. A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976).

■ However, the Court finds that the Defendant's assertion of the ICRA defensively comports with the ICRA's purpose, and the Supreme Court's interpretation thereof. First, use of the ICRA as a defense to an action brought by the Tribe does not infringe on the Tribe's sovereign immunity, since the Tribe is not being subjected to suit. Second, while tribal courts have been deemed adequate adjudicators of these suits, such a forum is unavailable to Defendant in this case, since the Tribe has chosen to bypass tribal court and bring this action in federal court.

■ The Tribe is correct in its assertion that the bringing of a suit by a sovereign does not amount to a waiver of sovereign immunity. *See Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) ("[A] tribe does not waive its sovereign immunity from actions

7. Habeas review only appears applicable to exclusion from tribal lands if the exclusion is the result of a criminal action. *See Alire v. Jackson,* 65 F.Supp.2d 1124, 1127–28 (D.Or. 1999); *see also Poodry,* 85 F.3d at 887–89 (noting that, while declining to resolve the question of whether habeas review is restricted to cases involving a tribal criminal conviction, that the exclusion in that case arose in a criminal context). Since there is no evidence that Torres' exclusion was in lieu of a criminal penalty, nor is this a habeas action, the Court finds it unnecessary to address this issue any further.

that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe."); *Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization,* 757 F.2d 1047, 1053 (9th Cir.1985); *United States v. City of Los Angeles,* 595 F.2d 1386, 1389 (9th Cir.1979). However, those cases restrict a defendant from bringing a counterclaim against the sovereign. Here, Torres is not seeking any affirmative relief. He is merely asserting that the ordinance that the Tribe is asking this Court to enforce was passed in violation of certain civil rights, which are guaranteed by the ICRA. It would be contrary to any reasonable notion of justice to allow a plaintiff—sovereign or not—to bring an action against a defendant while precluding that defendant from defending that action.

In this regard, the Supreme Court holding in *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940), while not directly applicable, is instructive. In that case, the United States was bringing suit on behalf of two Indian Nations seeking to recover royalties for coal lands leased to a company that subsequently went into receivership. In response, the company asserted that it was owed credits by the Nations for an amount that exceeded the claimed royalties, and the company asserted a cross-claim to recover those sums. *Id.* at 510–11, 60 S.Ct. at 655–56. The Supreme Court reviewed the validity of a district court judgment that granted both royalties to the Nations and credits to the lessee company in excess of the royalties granted to the Nations, in light of the sovereign immunity of the Nations to be free from suit without consent. By concession of the government, the Court con-

cluded that the defendant company was allowed to recover a judgment only for an amount equal to the amount that the sovereign sought to recover against it, but no more. *Id.* at 511–12, 60 S.Ct. at 656. The Court recognized that "a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principle claim." *Id.* at 511, 60 S.Ct. at 656 (citing *Bull v. United States,* 295 U.S. 247, 261, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935)). While Defendant in the present case is obviously not asserting a claim for recoupment, the logic of *United States Fidelity & Guarantee Co.* still applies, in that a defendant may defend against a suit brought by a sovereign, to the extent that defendant does not seek affirmative relief against that sovereign.[8]

The principle that a sovereign bringing suit waives immunity as to counterclaims of the defendant for recoupment, when that counterclaim aries out of the same transaction or occurrence as the sovereign's suit, was applied to Indian tribes again in *Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324 (10th Cir.1982). In that case, however, the court denied the defendants relief since the counterclaim did not arise out of the same transaction or occurrence as the tribe's suit. *Id.* at 1344–45. Here, Torres' defense certainly arises out of the passage of the same ordinance that the Tribe is seeking to have enforced.

*Jicarilla Apache Tribe* is also significant because it involved a counterclaim against the tribe for violations of the ICRA. Relying on *Santa Clara,* the court ruled that the defendants could not make such a claim, as the tribe had not waived its sovereign immunity to those counterclaims. *Id.,* 687 F.2d at 1345.

---

8. As recognized in *Rosebud Sioux Tribe v. Val–U Cosntruction Co.,* 50 F.3d 560, 562 (8th Cir.1995), "Recoupment is a defensive action that operates to diminish the plaintiff's recovery rather than to assert affirmative relief."

Nevertheless, that reasoning is inapplicable to the present case in two respects. First, Torres is not asserting a counterclaim; he is asserting a defense to this Court's enforcement of the tribal ordinance. In that regard, the Court's judgment—were the Court to agree that the ordinance violated the ICRA—would not necessarily impact the validity of the ordinance, it would merely preclude its enforcement in the federal courts. Second, the Tenth Circuit has adopted an exception to *Santa Clara,* known as the *"Dry Creek* exception," and the *Jicarilla Apache Tribe* court found its requirements were not met in that case.[9] However, the Ninth Circuit has repeatedly declined to adopt the *"Dry Creek* exception," and therefore the Tenth Circuit's application of *Santa Clara* is of questionable authority in this circuit. *See Demontiney v. United States,* 255 F.3d 801, 815 n. 6 (9th Cir.2001); *Johnson v. Gila River Indian Cmty.,* 174 F.3d 1032, 1035 n. 2 (9th Cir.1999).

In looking at the aims of the statute, particularly in light of the holding in *Santa Clara,* the Court finds that Torres can assert a violation of the ICRA as a defense to an action seeking to enforce an ordinance that was passed allegedly in violation of the rights granted under the ICRA. The holding in *Santa Clara* was specifically limited to finding that no private civil right of action existed in *federal courts* (except under habeas review), and recognized that tribal courts were adequate forums to adjudicate these disputes. Thus, Torres clearly would have been able to assert a defense under the ICRA had the Tribe originally brought this action in tribal court (and then sought enforcement of the tribal court order in federal court).

Therefore, a finding that the ICRA cannot be raised defensively in this action would create perverse forum shopping incentives. Under that regime, a tribe would be rewarded for avoiding a tribal court enforcement of a tribal ordinance and going directly to federal court, because then a defendant—both members and non-members alike—would be precluded from asserting a violation of their civil rights as a defense.

Since one of the balancing goals in limiting the enforcement of the ICRA, as acknowledged in *Santa Clara,* was to recognize tribal self-government and allow tribal forums to enforce the rights created by the ICRA, creating an incentive to avoid such forums would not comport with that goal. Furthermore, while the sovereign status of Indian tribes precludes an individual from bringing suit against a tribe without the tribe's express consent, the law does not preclude a defendant from raising a defense that attempts to limit the result that the tribe is seeking to obtain against that defendant.

 Finally, the Court finds it noteworthy that, had the Tribe sought to ban Torres from the Reservation through a judgment in tribal court, rather than through the passage of an ordinance, then such a judgment would not be enforceable in federal court unless Torres had been assured due process of law. As the Ninth Circuit recently noted, "As a general rule, federal courts must recognize and enforce tribal court judgments under principles of comity. Two circumstances preclude recognition: when the tribal court either lacked jurisdiction or *denied the losing*

---

**9.** The *"Dry Creek* exception," established in *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes,* 623 F.2d 682 (10th Cir.1980), recognizes a federal right of action for civil claims under the ICRA under limited circumstances. To apply, the plaintiff must demonstrate that the dispute involves a non-Indian party, that a tribal forum is not available, and that the dispute involves an issue falling outside internal tribal affairs. *See Ordinance 59 Association v. U.S. Dep't of the Interior Secretary,* 163 F.3d 1150, 1156 (10th Cir.1998).

*party due process of law.* Under limited circumstances ... a federal court may refuse to recognize a tribal judgment on equitable grounds as an exercise of discretion." *AT & T Corp. v. Coeur D'Alene Tribe,* 283 F.3d 1156, 1161 (9th Cir.2002) (citing *Wilson v. Marchington,* 127 F.3d 805, 810 (9th Cir.1997) (emphasis added)).

In this regard, the Court finds it would be improper to fashion a ruling whereby a tribe can avoid having to comply with both the rules of comity requiring foreign judgments to comply with due process, and the rules under the ICRA requiring the same due process compliance, by circumventing an adjudication in tribal courts and simply passing an ordinance obtaining the desired result, and then seeking its enforcement in federal court. That was certainly not the Congressional intention of the ICRA.

■■■ Therefore, the Court holds that the ICRA is an applicable defense to this action. Accordingly, Torres has submitted evidence that creates a material issue of fact surrounding the passage of the ordinance excluding him from the Reservation, in support of his argument that the ordinance constitutes a deprivation of property without due process, and that the ordinance amounts to an unlawful bill of attainder. In that regard, the Tribe has not satisfied its burden on summary judgment, even assuming the Tribe can cure its evidentiary defects noted above, and its motion must fail.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is DENIED. The parties are hereby ordered to appear for a status conference on September 9, 2002 at 1:30 p.m.

IT IS SO ORDERED.